# ORIGINAL

FILED 

SEP 2 2 2015

U.S. COURT OF
FEDERAL CLAIMS

## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| **CHRISTOPHER WILLIAMS** | : | Case No. 15 - 1059 C |
| **Plaintiff,** | : | |
| **vs.** | : | Judge _____ |
| **THE UNITED STATES** | : | |
| **Defendant.** | : | |

---

## COMPLAINT

---

Now comes the plaintiff Christopher Williams, ("Mr. Williams"), and for his Complaint against the defendant, the United States, acting by and through the Department of Veterans Affairs, sets forth the following allegations:

### Introduction

1.  This is an action for breach of contract.

### Jurisdiciton

2.  This Court has jurisdiction over this action pursuant to the Tucker Act, 28 U.S.C. § 1491.

**Parties**

3.      Mr. Williams is, and at all times has been, a United States citizen and a resident of Montgomery County, Ohio.

4.      Defendant is, and at all relevant times has been, the United States which, through the Medical Center Director of the Dayton Veterans Affairs Medical Center ("DVAMC"), Mr. Williams' current employer, entered into the contract which is the subject of this suit.

**Factual Allegations**

5.      Mr. Williams began working at the DVAMC on September 23, 2001 as a Police Officer.  He maintained an exemplary performance record consistently receiving "Exceptional" performance ratings, and no disciplinary action.   Some of Mr. Williams' more notable accomplishments while on the job include saving the life of a veteran that attempted suicide, developing a program that equipped all DVAMC Police cruisers with laptop computers at no cost to the Agency, and building a gym for DVAMC Police Officers with 24/7 access by securing private donations and transferring equipment that the DVAMC was no longer using.

6.      Following unsubstantiated allegations of misconduct, Mr. Williams was removed from federal employment on August 9, 2013 against the advice of the Employee Labor Relations Specialist assigned to the case.  Mr. Williams timely filed an appeal.

7.      On June 3, 2014, the parties entered into a Settlement Agreement, attached hereto as Exhibit A.  Pursuant to the Settlement Agreement, the Department of Veterans Affairs agreed to process an SF-50 and SF-52, rescind the removal, and restore Mr. Williams to the position of Police Officer, retroactively to August 9, 2013.  Ex. A, ¶ 2.  The Department of Veterans Affairs

further agreed "that any, and all, documents of, and concerning, the . . . .Notice of Proposed Removal and Removal Decision shall be removed from all files, electronic, or otherwise, under the control of Dayton Veterans Affairs Medical Center." Ex. A, ¶ 3.  The Department of Veterans Affairs also agreed to pay Mr. Williams a lump sum payment of $45,000.00.  Ex. A, ¶ 6.

8.      Pursuant to the Settlement Agreement, Mr. Williams was to be placed in a Leave without Pay ("LWOP") status retroactive to August 9, 2013, and shall remain in a LWOP status until June 30, 2016.   Ex. A, ¶¶ 7, 8.   The Settlement Agreement confirmed that the purpose of the LWOP period . . . is to afford [Mr. Williams] the opportunity to apply for other federal positions as a federal employee." Ex. A, ¶ 9. Mr. Williams was free, under Department of Veterans Affairs policies and procedures, to apply for vacant positions at other Department of Veterans Affairs facilities, other than the Dayton location.  Ex. A, ¶ 12.

9.      Pursuant to the Settlement Agreement, the Department of Veterans Affairs agreed it would not "impede, [or] interfere with [Mr. Williams'] efforts to transfer to other federal agencies, including, but not limited to, the Department of Veterans Affairs."  Ex. A, ¶ 17. Further, the Department of Veterans Affairs agreed "it will neither impede, nor interfere with [Mr. Williams'] efforts to obtain employment with any employer, federal sector or otherwise." Ex. A, ¶ 18.  The Department of Veterans Affairs agreed it would only provide a neutral reference, meaning, "(1) position held, (2) dates position held, and (3) salary of position held." Ex. A, ¶¶ 14, 15.

10.     Mr. Williams immediately began looking for work as a Police Officer at other Veterans Affairs Medical Centers.  He applied for a vacant position in West Palm Beach, Florida.  Unbeknownst to Mr. Williams, the DVAMC failed to issue an SF-50, in violation of the Settlement Agreement.  His application was denied because he could not submit a current SF-50 with his application.

11.     Mr. Williams applied for a Police Officer position with the Orlando Veterans Affairs Medical Center.  He interviewed by phone with the Orlando Deputy Chief of Police.  The interview went well, but the Deputy Chief commented that he was unable to locate Mr. Williams through an Agency-wide Microsoft Outlook search or locate an email address for Mr. Williams. Mr. Williams told the Deputy Chief that he was on LWOP.

12.     Mr. Williams learned that his personnel file was in an "inactive" status.  On September 30, 2014, a Human Resources representative from the Orlando Veterans Affairs Medical Center told Mr. Williams they were questioning whether he was in fact a current employee and asked Mr. Williams the name of his supervisor.  Mr. Williams responded that he was on LWOP and provided the name of the Captain at Dayton.  A current email address indicates a "current" employee status required for application.  The DVAMC failed to reinstate his email and failed to otherwise change his status from inactive to "current" in his personnel file.

13.     On October 1, 2014, Mr. Williams spoke with Human Resources at the DVAMC, which provided him a copy of his last three SF-50s in his personnel file.  The most recent showed that the LWOP was due to an M.S.P.B. settlement agreement, and gave the M.S.P.B.

case number. Another SF-50 documented the "Nature of Action" as "REMOVAL" and, under "Remarks," said "REASON FOR SUSPENSION: INAPPROPRIATE CONDUCT AND CONDUCT UNBECOMING A FEDERAL EMPLOYEE". Mr. Williams notified the DVAMC of the breach of contract and asked that the breach be cured, but that did not happen.

14.     Mr. Williams was denied employment at the Orlando Veterans Affairs Medical Center. Even after being assured by the DVAMC that the foregoing issues with the SF-50s had been fixed, Mr. Williams was unable to access his Electronic Official Personnel Folder ("EOPF") because it was "inactive." Mr. Williams again notified the DVAMC Center that it was still breaching the Settlement Agreement.

15.     Mr. Williams applied for a Police Officer position at the Veterans Affairs Medical Center in Bay Pines, Florida. An interview was arranged. In an effort to cure any problems with an "inactive" personnel file prior to the interview, Mr. Williams called the EOPF Help Desk. Mr. Williams was told that he was no longer employed and his personnel file was being transferred to the national archives for former employees. Mr. Williams, again, notified the DVAMC of the issue so that it could be corrected.

16.     Mr. Williams interviewed with a Captain and an Officer from the Bay Pines, Florida facility on November 11, 2014. It went very well. He was called back on November 13, 2014 to interview with the Chief on November 17, 2014. During the November 13, 2014 phone call, he was told that after an interview with the Chief to make sure their philosophy is the same, the Bay Pines HR would contact the Dayton HR and want him down there as soon as possible. In that lengthy conversation, the captain gave Mr. Williams several indications that he was very

likely to get the job.  For example, he was "selling" their location to Mr. Williams and discussing how wonderful their beaches are, why he should want to live on the Gulf side, and how their location is better than Orlando's.  He told Mr. Williams that their location was the ideal distance (i.e. close, but not "too close") from Mr. Williams' other family in Florida.  He also asked Mr. Williams to make sure his wife was agreeable to moving to Florida and said that he would not want Mr. Williams leaving Bay Pines for the Orlando facility, which was still hiring.

17.     On November 14, 2014, Mr. Williams – again – notified the DVAMC that compliance with the Settlement Agreement was imperative so as not to cost Mr. Williams another job opportunity.

18.     On November 17, 2014, Mr. Williams interviewed with the Bay Pines Chief and it, too, went well.  The Chief also tried to "sell" the Bay Pines area to Mr. Williams.  The Chief asked Mr. Williams how soon he could start and Mr. Williams said he could go down there immediately.  The Chief said that their HR department will be in contact with Mr. Williams for the next step.   That same day, Mr. Williams notified the DVAMC that he expected to be offered the Bay Pines job and that he wanted to make sure all outstanding issues regarding the documentation in his personnel file were corrected and again requested his email address and access be reinstated.

19.     On or about December 4, 2014, Mr. Williams learned that he was not selected for a position at Bay Pines.

20.     In a January 2, 2015 email, the Medical Center Director of the DVAMC admitted the Department of Veterans Affairs had breached the Settlement Agreement.  The email provided that, going forward, an Outlook account in Mr. Williams' name will be available.

21.     Mr. Williams has attempted to obtain federal employment multiple times since his unlawful removal and the execution of the Settlement Agreement, but has been unsuccessful because his personnel records retained by the Department of Veterans Affairs contained false employment information that dissuaded other facilities from hiring him.   Moreover, on information and belief, employees at the DVAMC have given negative and other than "neutral" references to other facilities.

22.     As a result of the Department of Veterans Affairs' breaches, Mr. Williams has been unable to obtain a paying job with the federal government.  He has mitigated his damages by obtaining various security jobs, but those have paid considerably less than the earnings and benefits he would have received as a Police Officer at the various Veterans Affairs Medical Centers.

### First Claim
### (Breach of Contract)

23.     Mr. Williams hereby incorporates each of the foregoing paragraphs as if fully rewritten herein, and further states that:

24.     By failing to remove references to Mr. Williams' unlawful removal, the Department of Veterans Affairs breached the Settlement Agreement.  Moreover, by failing to correct the breaches after repeatedly requested by Mr. Williams and failing to reinstate Mr.

Williams' email account, the Department of Veterans Affairs impeded and interfered with Mr. Williams' ability to find another federal job, in violation of the Settlement Agreement.   The breaches of the Settlement Agreement were material.

25.   Since his unlawful removal and the execution of the Settlement Agreement, Mr. Williams has applied for various positions for which he was qualified.  Mr. Williams was denied or not considered for these positions because of the Department of Veterans Affairs' breaches of the Settlement Agreement.

26.   As a result of the Department of Veterans Affairs' breaches of contract, Mr. Williams has suffered lost wages and benefits, including back pay and front pay,  in an amount not yet fully ascertained, but to be determined at trial.

WHEREFORE, Mr. Williams respectfully demands judgment in his favor and requests an award of for damages in an amount not yet fully ascertained, but estimated to be $1,000,000, to include back pay, front pay, pre-judgment interest, interest, costs herein expended, and such other relief as the Court finds just.

DATED this 16th day of September, 2015.

Respectfully submitted,

Christopher Williams (pro se)
7028 Klyemore Drive
Dayton, Ohio 45424
(937) 479-0634 (phone)
(937) 260-4201 (facsimile)
vacopchris@msn.com

**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**
**CENTRAL REGIONAL OFFICE**

| | | |
|---|---|---|
| CHRISTHOPER WILLIAMS | ) | |
| | ) | |
| Appellant, | ) | **Docket Number** |
| | ) | CH-0752-13-2514-I-1 |
| v. | ) | |
| | ) | **Administrative Judge** |
| DEPT. OF VETERANS AFFAIRS | ) | NINA PUGLIA |
| | ) | |
| | ) | |
| Agency. | ) | |

<u>SETTLEMENT AGREEMENT</u>

**WHEREAS,** Appellant filed an appeal with the Merit Systems Protections Board (hereinafter "MSPB") Docket No. CH-0752-13-2514-I-1; and

**WHEREAS,** Appellant and the Agency have had extensive discussions regarding settlement;

**WHEREAS,** the Parties wishes to resolve all disputes without further time, expense, aggravation, litigation, or administrative process.

**NOW THEREFORE,** in consideration of the foregoing, the Parties hereby agree to the following:

1. Appellant's August 9, 2013, removal for "Inappropriate Conduct Toward Staff" and "Conduct Unbecoming a Federal Employee" shall be rescinded.

2. The Agency shall process a Standard Form 50 and a Standard Form 52; (1) rescinding Appellant's removal and (2) restoring him to the position of Police Officer, Police Service, Dayton Veterans Affairs Medical Center retroactive to August 9, 2013.

3. The Parties agree that any, and all, documents of, and concerning, the Appellant's Notice of Proposed Removal and Removal Decision shall be removed from all files electronic, or otherwise, under the control of Dayton Veterans Affairs Medical Center.

EXHIBIT A

1

4. The Parties agree that once the Appellant is restored, his seniority will be restored and shall accrue consistent with the applicable Department of Veterans Affairs' rules and regulations.

5. The Parties agree that once the Appellant is restored, he becomes eligible for participation in the Federal Employees Retirement System and the federal Thrift Savings Plan system, consistent with all applicable rules and regulations governing these programs.

6. The Agency shall tender a lump sum payment to the Appellant in the amount of $45,000.00 to satisfy any, and all, claims of attorney fees, back pay, benefits, compensatory damages, or lost wages. The payment shall be made via two checks, one to "Christopher Williams" in the amount of $19,545.97, and one to Weprin and Folkerth, LLC, in the amount of $25,454.03.

7. The Appellant agrees, and understands, the he shall be placed in a Leave without Pay (LWOP) status retroactive to August 9, 2013.

8. The Appellant agrees, and understands, that he shall remain in a LWOP status until June 30, 2016.

9. The Appellant agrees, and understands, that purpose of the LWOP period referenced in Provisions #7 and #8 of this agreement is to afford him the opportunity to apply for other federal positions as a federal employee.

10. The Appellant agrees, and understands, the during the LWOP period referenced in Provisions #7, #8, and #9 of this agreement that he will neither receive duties and responsibilities as Police Officer (or any other position), nor shall he receive compensation.

11. The Appellant agrees, and understands, that should he obtain another position with another Federal Agency prior to **June 30, 2016**, that his LWOP status shall be terminated.

12. Appellant understands that during the period of LWOP referenced in Provisions #7, #8, #9, #10, and #11 of this agreement, he is free, under Department of Veterans Affairs policies and procedures, to apply for vacant positions at other Department of Veterans Affairs facilities save for; Dayton Veterans Affairs Medical and/or any of its affiliated Community Based Out-Patient Clinics under Dayton Veterans Affairs Medical Center's control.

13. Appellant agrees, and understands, that should he fail to obtain a position by **June 30, 2016**, his LWOP status shall be terminated, and he will be considered to have resigned.

14. The Agency agrees to provide a neutral reference to all prospective employers.

15. The Parties agree that the for purposes of this settlement agreement "neutral reference" shall mean that the Agency shall provide the following information to a prospective employer; (1) position held, (2) dates position held, and (3) salary of position held.

16. During the LWOP period, the Dayton Veterans Affairs Medical Center shall, at Appellant's request, provide Appellant all training, including but not limited to firearms training, necessary to maintain a position as Police Officer, The Dayton Veterans Affairs Medical Center shall re-issue Appellant his badge and credentials if they become a pre-requisite to applying for or transfer to a Police Officer position at another VA location.

17. The Agency agrees that it will neither impede, nor interfere with the Appellant's efforts to transfer to other federal agencies including, but not limited to, the Department of Veterans Affairs.

18. The Agency agrees that it will neither impede, nor interfere with the Appellant's efforts to obtain employment with any employer, federal sector or otherwise.

19. Appellant's signature constitutes an immediate waiver and withdrawal, with prejudice any, and all, actions, claims, complaints, grievances, appeals and proceedings including, but not limited to the instant appeal (CH-0752-13-2514-I-1), of whatever nature, against the Agency, its officers and employees, in their personal as well as their official capacities, which are now or hereafter may be asserted by him, or on his behalf, regarding his removal.

20. The parties shall keep the terms of this settlement agreement confidential. However, Appellant may disclose the terms of the settlement agreement to his wife, attorneys, and tax advisors, or as required by law or in response to subpoena. Likewise, the Agency may disclose the terms of this settlement agreement where required by law or regulation or in response to a subpoena. The parties may also disclose the terms of this settlement agreement in any action to enforce any party's rights or obligations hereunder. The parties shall respond to inquiries regarding the status of Appellant's removal or the appeal known as MSPB Docket No. CH-0752-13-2514-I-1 by stating only that the matter has been resolved.

21. The Parties agree that this settlement agreement, consisting of four (4) pages constitutes, constitutes the full agreement between the Parties and that there are no other agreements oral and/or written with respect to the Appellant's appeal.

22. The Parties agree, and understand, that if one provision of this settlement agreement is breached; such a breach does not nullify the remaining provisions of this agreement.

3

23. The Parties have read, and understood, each provision of this settlement agreement.

24. The Board shall maintain jurisdiction of this agreement for enforcement purposes.


_____     6/3/14
Christopher Williams                  Date
Appellant


_____     6/3/14
Glenn A. Costie, FACHE               Date
Medical Center Director


4